03/01/2004 17:06   000000000                                              PAGE  04

ED CAREY DRIVE FAMILY MEDICAL CENTER
DR. ABRAHAM CANO
2401 N. ED CAREY DRIVE STE. 1
HARLINGEN, TEXAS 78550
956-425-9161

179

PATIENT REQUISITION REPORT

LAST NAME: GONZALEZ          DOB: 07/24/51   DOCTOR: CANO
FIRST NAME: ENEDELIA         AGE: 51         LOCATION:
PATIENT ID: 280466401        SEX: F          COMMENT

D/T DRAWN: 02/14/03     BY: RMS      D/T ENTERED: 02/14/03  12:31
ACC STON: 1843                       COMMENT: fasting

| TEST   | RESULT | NORMAL RANGE | LL[ NORMAL ]HI | UNITS |
|--------|--------|--------------|----------------|-------|
| URIC   | 4.3    | 2.6 - 6.0    | [       *   ]  | mg/dL |
| CHOL   | 214 H  | 0. - 200.    | [           ]* | mg/dL |
| AST    | 14     | 7. - 31.     | [   *       ]  | U/L   |
| ALT    | 10     | 0. - 30.     | [   *       ]  | U/L   |
| ALK    | 82     | 42. - 98.    | [       *   ]  | U/L   |
| TBILI  | 1.0    | 0.0 - 1.0    | [          *]  | mg/dL |
| GLU    | 130 H  | 70. - 105.   | [           ]* | mg/dL |
| CA     | 8.8    | 8.5 - 10.6   | [ *         ]  | mg/dL |
| BUN    | 22 H   | 7. - 18.     | [           ]* | mg/dL |
| CREAT  | 0.9    | 0.7 - 1.3    | [   *       ]  | mg/dL |
| ALB    | 4.1    | 3.5 - 5.0    | [    *      ]  | g/dL  |
| TPROT  | 7.2    | 6.4 - 8.3    | [      *    ]  | g/dL  |
| NA     | 141    | 136 - 145    | [         * ]  | mEq/L |
| K      | 4.6    | 3.5 - 5.1    | [        *  ]  | mEq/L |
| CL     | 106    | 96. - 107.   | [         * ]  | mEq/L |
| CO2_LC | 26.2   | 23.0 - 29.0  | [      *    ]  | mEq/L |

H=HIGH NORMAL

REVIEWED BY: RMS    DATE 2-14-03

NA no change
next visit



03/01/2004 17:06   000000000                                            PAGE 03

                                                                         130

ABRAHAM CANO M.D.
2401 FERRY DRIVE SUITE A
HARLINGEN, TEXAS 78550-822101
(956)425-9182    45D0705262

ID: 280466401                02-14-03
                             14:29
                             Patient
                             Limits 1

WBC    x10^3/ul.    4.5    10.5
LY     %           20.5    51.1
MO                  1.7     9.3
GR                 42.2    75.2
RBC                 3.5     5.4
                    0.1     0.6
                    1.4     6.5
                    4.00    6.00
                   11.0    18.0
                   35.0    60.0
MCV                80.0    99.9
MCH                27.0    31.0
MCHC               33.0    37.0
RDW                11.6    15.7
PLT               150.    450.
MPV                 7.8    11.0

WBC HISTOGRAM       RBC HISTOGRAM       PLT HISTOGRAM

Enedelia Gonzalez

PAGE 02

03/01/2004  17:05  000000000

**CLINICAL PATHOLOGY LABORATORIES, INC.**
9200 Wall Street · Austin, Texas 78754
512-073-1800  1-800-633-4757

CAP Accreditation #: 21525-01
CLIA # 45D0509003

19013
ABRAHAM CANO, M.D.
2401 ED CAREY DR #A
HARLINGEN, TX 78550

181

| PATIENT NAME | PATIENT ID. | ROOM NUMBER | AGE | SEX | PHYSICIAN |
|---|---|---|---|---|---|
| GONZALEZ, ENEDELIA | | | 51 | F | ABRAHAM CANO, M |

| PAGE | REQUISITION NO. | ACCESSION NO. | ID. NO. | COLLECTION DATE & TIME | LOG-IN-DATE | REPORT DATE & TIME |
|---|---|---|---|---|---|---|
| 1 | P295654 | A6968738 | | 02/14/03 NO TIME | 02/14/03 | 02/15/03 7:30A |

TESTS REQUESTED
TSH

| TEST | RESULTS (OUT-OF-RANGE / WITHIN RANGE) | UNITS | EXPECTED RANGE |
|---|---|---|---|
| TSH | 1.7 | UIU/ML | 0.3 - 5.1 |

UNLESS OTHERWISE INDICATED, ALL TESTING PERFORMED AT
CLINICAL PATHOLOGY LABORATORIES, INC.  9200 WALL ST  AUSTIN, TX 78754
CLIA NUMBER 45D0505003  CAP ACCREDITATION NO. 21525-01

*** FINAL REPORT ***

SOCIAL SECURITY ADMINISTRATION
OFFICE OF HEARINGS AND APPEALS

182

**TRANSCRIPT**

In the case of            Claim for

Enedelia Gonzalez           Supplemental Security Income

(Claimant)

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

(Wage Earner) (Leave blank     (Social Security Number)
in Title XVI Cases or if
name is same as above)

**Hearing Held**

at

Harlingen, Texas

(Room No., Building, Street Address, City, State)

on

March 3, 2004

(Month, Day, Year)

by

Christopher Williams

(Administrative Law Judge)

APPEARANCES:   Enedelia Gonzalez, the Claimant
                 Philip Lerway, Representative for Claimant
                 Dr. Charles Murphy, Medical Expert
                 Mitka Chacon, Vocational Expert
                 Frances Gonzalez, Spanish Interpreter

INDEX OF TRANSCRIPT                                                  183

In the case of:                                    Account Number

Enedelia Gonzalez, Claimant                          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

                                                        Page

Testimony of Enedelia Gonzalez                          2

Testimony of Dr. Charles Murphy                         6

184

(The following is a transcript of the hearing held before Christopher Williams, Administrative Law Judge, Office of Hearings and Appeals, Social Security Administration, on March 3, 2004, at Harlingen, Texas, in the case of Enedelia Gonzalez, Social Security Number 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. The claimant, Enedelia Gonzalez, appeared in person and was represented by Philip Lerway. Also present were Dr. Charles Murphy, Medical Expert, Mitka Chacon, Vocational Expert, Frances Gonzalez, who will act as Spanish Interpreter.)

(The hearing commenced at 9:05 a.m., on March 3, 2004.)

OPENING STATEMENT BY ADMINISTRATIVE LAW JUDGE:

ALJ: Okay. We're on the record in the case of Enedelia Gonzalez, E-n-e-d, D as in David, e-l-i-a G-o-n-z-a-l-e-z, Social Security number 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. I'm Administrative Law Judge Chris Williams. The claimant appears with attorney, Philip, P-h-i-l-i-p Lerway, L-e-r-w-a-y. And I should mention that today's date is 3/3/04. The time now is 9:09 a.m. Present at my request are two experts, Dr. Charles Murphy, Doctor of Medicine, and Mitka Chacon, a Vocational Expert. Our interpreter is Frances Gonzalez, G-o-n-z-a-l-e-z. Mr. Lerway, you've had an opportunity to look at our six part exhibit folder. Is there any objection to my receiving into the official record the contents of our six part exhibit folder?

ATTY: No, Judge.

ALJ: Okay. We've added in the additional material that you had brought with you today. So --

ATTY: Thank you.

ALJ: -- it is part of the record. The documents so identified and received.

(Exhibits, previously identified, were received into evidence and made a part of the record thereof.)

2

185

ALJ:  Let's go ahead and swear in our interpreter first.

(At this time, FRANCES GONZALEZ, was duly sworn to act as Spanish Interpreter.)

ALJ:  Okay.  All right.  Then let's to ahead and swear our experts.  Okay.  Finally let's swear our claimant in Spanish.  Thank you.  All right.  Mr. Lerway, is there an opening statement?

ATTY:  No, sir.  No statement.

ALJ:  All right.  Let me make a few notes and we'll get underway.  All right.

(The claimant, ENEDELIA GONZALEZ, having been first duly sworn, testified as follows:)

EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q  How old are you today, ma'am?

A  52 years.

Q  Is your birthday, July 24, 1951?

A  Yes.

Q  And how tall are you?

A  5'.

Q  Okay.  How much do you currently weigh?

A  It's 185, Your Honor.

Q  Are you right-handed or left-handed?

A  Right-handed.

Q  Did someone help you fill out the forms to apply for Social Security benefits?

A  Yes.  My family.

Q  Okay.  Is it also because you cannot read or write in English?

3                                                                186

    A  It's because I can't see and also because I cannot read English.

    Q  Are you married, widowed, single, divorced?

    A  Divorced.

    Q  Okay.  What year was that effective?

    A  I don't remember.

    Q  Do you recall how long you were married?

    A  Thirteen years.

    Q  Did she say 13 or 3?

    A  Thirteen years married.

    Q  Are you responsible for the care of any children age 18 or younger?

    A  I have an 18 year old that's disabled.

    Q  And it's my understanding that you're alleging that you've been unable to work since January 1, 1987.  Is that correct?

    A  Yes.  I have not worked since the incident.

    Q  Why?

    A  Because I have that disabled child that I told you about?

    Q  I'm sorry?

    A  Because I have that child that's disabled that I told you about?

    Q  So basically you spend your time taking care of your disabled child?

    A  Yes.

    Q  What type of disability does your child have?

    A  Meningitis.

Q And has that left him damaged in his brain?

A Yes.

Q How many years of school have you completed in the United States?

A Two years.

Q So just two years in this country?

A Yes. Two years of schooling here.

Q And if I may, what type of work have you done in the past?

A I was working in the field. I was picking oranges and grapefruit and all the crops, cabbage. Also the corn field, tomatoes, peppers, whatever vegetable.

Q In your own words, why are you unable to work?

A Because I'm sick.

Q Okay. Why are you sick?

A Arthritis.

Q And where is the arthritis?

A All my body, and I can't see.

Q Are there any other problems that you have that interfere with your ability to work?

A And then it's my sick child that I have to look after. I'm his mother.

Q Any problems with your vision?

A Without my glasses I can see nothing.

Q Okay. How well do you do with your glasses on?

A I -- they help me some, but very small letters I cannot see even with the glasses.

5

186

Q Are there any other problems that you have that interfere with your ability to work?

A Just my lower back. I have a problem that I can't work.

ALJ: Mr. Lerway, this is an SSI case. I have a filing date of May 30, 2002. As opposed to trying to go all the way back to '87, I propose that we make that the new onset date?

ATTY: Yes, sir.

ALJ: Do you have any problem with that?

ATTY: No, sir.

ALJ: Okay. All right. Your witness.

EXAMINATION OF CLAIMANT BY ATTORNEY:

Q Has, has your son been disabled since birth?

A No. He was 10 months old.

Q Ten months. How, how big is he now?

A He's just like -- he's about that big. But she's saying, and that I have to carry him all the time with me. But today I couldn't bring him because I did come to see where the place was and they told me I couldn't bring any children here.

ATTY: And she indicated he's about two to two-and-a-half feet long.

BY ATTORNEY:

Q How does he eat?

A He doesn't eat food. I have to get him -- buy two, two in the, the supplement food. I find that somewhere, for the formula they feed him through a tube.

Q Can he walk or use his hands?

6

129

A  No, he does nothing.  I carry him with me all the time wherever I go in my arms.

Q  Do you take any medicines for your arthritis?

A  Just Tylenol.

Q  Why do you not take prescription medicines?

A  I don't see a doctor because I don't have any funds.

Q  You said you had pain all over, and you mentioned your lower back.  Can you tell us where else on your body you have pain?

A  It's in my wrist, and the back of my neck mostly, in my lower, lower -- in my left leg.  I'm limping because of the pain in my leg, left leg.

Q  Do you drive?

A  No.

Q  Do you have a driver's license?

A  No.

ATTY:  That's all I have.

ALJ:  All right.  Let's turn to Dr. Murphy.

(The medical expert, DR. CHARLES MURPHY, having been first duly sworn, testified as follows:)

EXAMINATION OF MEDICAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

Q  Dr. Murphy, state your full name for the record?

A  It's Charles Mark Anthony.

Q  And I believe your background is accurately set forth in the exhibit file?

A  Yes.

ALJ:  Counsel, for the purposes of these hearing and these --

7                                    190

this hearing -- I'm sorry -- this hearing only. Would you be willing to stipulate to the expertise of Dr. Murphy?

ATTY: Yes, sir.

ALJ: Thank you.

BY ADMINISTRATIVE LAW JUDGE:

Q All right. Looking over my onset, Doctor, of 8/30/02, is it your opinion that the claimant has an impairment that meets or equals a listed impairment?

A No, sir.

Q Okay. What impairments are well documented by -- strike that. What physical conditions are well documented by the objective medical evidence of record?

A Well, the only condition I think is obesity. She does have points of pain. And we have a lumbar X-ray that really shows just minimal spurring. And these were considered to be minimal degenerative changes. The -- these findings would be just consistent with age. We have two consultative exams, Exhibit 2-F. And their examination was normal. Their diagnosis really was just polyarthralgias. Which is a pain in the joints and the visual problems. At that time the glasses with the, the -- the vision with glasses was 20/20. And then we had another consultative exam, Exhibit 3-F. In here we have primarily an acute kind of pain in the neck and shoulders. And again, she had a normal exam. Her vision was 20/30 in each eye.

Q Uh-huh.

A And in the end, the diagnoses were obesity and basically a

8

191

complaint of back pain. So I think -- and that's pretty much the record. The treating physician notes really don't add anything to it.

Q Uh-huh.

A Just complaints of pain with normal exams, good vision. Really don't have any objective findings anywhere, except for minimal degenerative changes in the lumbar spinal, which is consistent with age and she had a normal back exam. Her testimony, the vision decrease. We don't have any evidence of that. And she testified that her primary problems I believe, were neck, wrist and leg -- and, and leg. But we don't have any objective evidence of problems in those locations.

Q If I may, considering her obesity, her minimal lumbar experiences of age, and her need for eyeglasses. What limitations, if any, would you place on her ability to sit?

A None.

Q Okay. Standing and walking?

A None.

Q Okay. What about lifting?

A None.

Q Okay. Would you impose any postural or environmental restrictions?

A No.

Q Okay.

ALJ: Your witness.

EXAMINATION OF MEDICAL EXPERT BY ATTORNEY:

9

192

Q Didn't Dr. -- is it Connell? Didn't he, didn't he one -- at one point say there was generalized arthritis?

A Well, he has a diagnosis of arthritis. But it's not borne out in the records. Here's a note from 11 of '99, 4-F. And he has a previous problem for arthritis. And let's see. I'm minus, this covers pages, one document, page 13. And I don't see any abnormalities here. I don't see any X-rays, I don't see any physical abnormalities consistent with arthritis.

Q The, the changes on X-ray were minimal. Minimal degenerative changes. Just --

A Uh-huh.

Q -- you say, consistent with age.

A Uh-huh. Uh-huh.

Q But it wouldn't -- wouldn't that still impose, say consistent with age -- she's not going to be able to lift as much as she was when she was 18, say?

A Well, I don't know. I'm not really you know. That, that gets into things like body habitus of age, which I'm not really supposed to consider. But --

Q Okay.

A -- you know, everyone, actually if you look at an MRI scan, virtually everyone has some degenerative changes after the age of 35 or so. And 35 or 40, you're, you're going to have those. And there is not a correlation necessarily with any symptoms. We look at the physical exam, and, and her exam was normal. She had -- actually we have here -- this was split into two pages. Let me

10

193

digress. Page 15, that was Connell's, the remainder of his note. And, and he has the rest of his exam here, and it was, it was normal. Consultative examiners found normal exam, normal range of motion, no deformities or anything. And her chief complaints today as I said, seem to be vision, back and wrist and leg. And I don't have anything now. Any impairment.

Q Do you think a -- the, the mini -- what was the word, a minimal degenerative changes --

A Uh-huh.

Q -- are enough to cause a minimum effect on ability to do work?

A I don't think so. I mean, if you look at the November '02 consultative exam. And that's just the second one she, she complained of pain in the neck and shoulders.

Q Is it under '02?

A Yes. '02. And then we get to the exam, no joint deformity or limitation of motion. She can walk on heels, toes, hop and squat without undo difficulty. And, and again, you know, the, the two consultative examiners really didn't even see fit to diagnose her as having lumbar spondylosis. They basically just put down a complaint of pain.

Q But he did however, limit standing to 80 percent, moving about to 75 percent and lifting to 70 percent, and carrying to 70 percent, and handling to 90 percent. And so it's not unlimited, is it?

A Well, he said the vast majority of the limitation is

11

194

secondary to obesity. It's not due to her back. And, and I'm not sure how to interpret these percentages. I mean, and, and really if you look at his complaint of back pain, that's a symptom. I wouldn't -- I'm not -- I wouldn't limit her based on the symptoms there. And I don't --

Q Wait. You said it seems to be just the effect of obesity. But, but obesity can be a limitation. Can it not?

A Well, I, I didn't see that it was. I, you know -- and obesity if it's morbid, can be a limitation. But, you know, many people are overweight in their apparent lives, and it's not a limitation.

Q Well, some people are skinny and can't work too.

A Yeah. Yeah. That's, that's right. Some people are skinny and can't work.

Q Okay.

ATTY: That's all I have. Thank you.

RE-EXAMINATION OF MEDICAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

Q Is there anything that you feel would limit her from the performance of light activity?

A No.

Q Okay. All right. Do you consider her to have nonsevere impairments?

A Yes.

Q And by the way, you do not rank her obesity as being what?

A No, I wouldn't think so. Now, I'd have to go back and calculate this. But I didn't calculate the body mass index. But I

12

195

just, you know, based on the record, didn't feel that it was --

Q  Okay.

A  -- a limitation.

Q  All right.  Fine.  Thank you.

ALJ:  Is there anything further before me?

ATTY:  No, sir.

ALJ:  All right.  The time now is 9:31.  Thank you very much.  Please thank the claimant for coming in, it's --

CLMT:  Yeah.

(The hearing closed at 9:35 a.m., on March 3, 2004.)

## C E R T I F I C A T I O N

I have read the foregoing and hereby certify that it is a true and complete transcription of the testimony recorded at the hearing in the above case, before Administrative Law Judge Christopher Williams.

_____
Eleanor Rickard, Transcriber
Free State Reporting, Inc.

_____
Zach Ragland, Proofreader
Free State Reporting, Inc.