UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 8 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ENEDELIA GONZALEZ | § |
| | § Civil Action No. B-04-123 |
| | § |
| Plaintiff | § |
| | § |
| v. | § |
| | § |
| JO ANNE B. BARNHART, | § |
| Commissioner of the | § |
| Social Security Administration | § |
| | § |
| Defendant | § |

## MOTION FOR SUMMARY JUDGMENT

The plaintiff moves the Court for summary judgment on the complaint for judicial review of a denial of a claim for social security benefits based on the administrative record which has been filed with the Court.

## PLAINTIFF'S BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF JURISDICTION

This action for judicial review of a denial of a claim for social security disability benefits is authorized by the Social Security Act (42 USC 405(g) and 1383(c)(3)).

### STATEMENT OF THE ISSUE

Whether the finding that the plaintiff does not have a severe impairment is supported by substantial evidence when the administrative law judge simply adopted the testimony of as non-examining medical expert without explaining why he rejected the assessment of an examining physician showing more than a minimal limitation in her ability to stand, move about, and lift objects.

## STATEMENT OF THE CASE

### Administrative Proceedings and Disposition

An administrative law judge ("ALJ") held a hearing on the denial of the plaintiff's claim for disability benefits under the Social Security Act ("Act") on March 3, 2004, in Harlingen, Texas. In the administrative decision issued on March 26, 2004, the ALJ found that the plaintiff does not have a severe impairment. [TR 13-22]. The Appeals Council denied the request for review of this decision on June 4, 2004. [TR 3-5]. The plaintiff has exhausted all administrative remedies and filed a timely request for judicial review.

### Relevant Facts

The plaintiff filed an application for disability benefits under title XVI of the Act on August 20, 2002, alleging disability because of arthritis. She was 51 years old at the time of the hearing, had an elementary school education in Mexico but is unable to communicate in English, and worked as an agricultural laborer in the past. [TR 73-80, 185-187]. She said she could not work because she is "sick" from "arthritis" located in "all my body." [TR 184]. The transcript of the hearing yielded all of twelves pages. [TR 183-195].

The treating records of Abraham Cano, M.D., from November 1999 to February 2003 show symptomatic treatment for generalized arthritis. [TR 145-163]. A consultative internal medicine examination performed by Dionisio Calvo III, M.D., resulted in a diagnosis of polyarthralgia, but Dr. Calvo offered no opinion about work-related limitations. [TR 137-140]. Another consulting examiner, John W. Reeder, M.D., diagnosed her with obesity and complaints of back pain. He offered the following opinion on her ability to perform work-related activities because of obesity: "sitting 100%, standing 80%, moving about 75%, lifting 70%, carrying 70%,

handling objects 90%, hearing 100%, and speaking 100%" [TR 143].

Charles Murphy, M.D., has a contract with the agency to act as an expert witness for a fee. He has never examined the plaintiff. He testified that the plaintiff has obesity and polyarthralgia with minimal degenerative changes in her spine. [TR 190]. In his opinion, she had no work-related limitations. [TR 191]. When questioned about Dr. Reeder's report on cross-examination, he said the limitations were based on her obesity rather than her back impairment and that he did not know how to interpret the percentages given. [TR 193-194]. The ALJ then appears to rehabilitate Dr. Murphy's testimony with a leading question (which is an ultimate conclusion of law rather than a medical opinion) [TR 194]:  Q: "Okay. All right. Do you consider her to have nonsevere impairments?"  A: "Yes."

## STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether the Commissioner's findings of fact are supported by substantial evidence and whether the proper legal standards were applied (42 USC 405(g) and 1383(c)(3)). See: Boyd v. Apfel, 239 F. 3d 698, 704 (5th Cir. 2001).

## PRELIMINARY STATEMENT

The plaintiff maintains that no statement or assertion made in this brief, and no omission from this brief, should be construed as a concession to any fact or legal proposition which is adverse to her claim for social security benefits. The focus of judicial review is whether the *Commissioner's decision*, and not whether the plaintiff's arguments to the Court, is consistent with applicable legal standards and supported by substantial evidence. The Court of Appeals for the Fifth Circuit has admonished that the "substantial evidence test does not involve a simple

search of the record for isolated bits of evidence" which supports the [Commissioner's] decision; rather, the courts must consider the record as a whole. Singletary v. Bowen, 798 F.2d 818, 822-823 (5th Cir. 1986).

## ARGUMENT

The ALJ's decision represents the same song and same dance — just call a medical experts to stack the deck against the claimant, adopt the opinion verbatim, and deny the claim. The regulations and rulings setting forth the law with respect to development of the record with opinions from the treating source, or weighing medical opinions in accordance with those regulations, have become meaningless. The agency is paying ALJs $100,000 a year to make tape recordings of so-called "medical expert testimony" and to transcribe the testimony into pre-formulated decisional rationales – a task that a clerk/typist could do just as well. The only time claimants have the opportunity for a fair and truly impartial consideration of their applications for disability benefits is when a United States district judge reviews the ALJ's decision in accordance with controlling judicial decisions and the regulations which real federal judges, despite handling other cases that arise under all fifty titles of the United States Code in an adversarial trial setting, actually take time to read and take seriously.

The "severe standard" is a *de minimis* standard. Step 2 of the sequential evaluation process is only a threshold inquiry that allows only claims based on the most trivial impairments to be rejected. Unless the ALJ is able to determine clearly from the record that an impairment or combination of impairment has no more than a minimal adverse effect on a plaintiff's ability to work, the decision should not end with step 2 of the sequential evaluation process (Social Security Ruling 85-28). A "severe" impairment is one which imposes more than a minimal

limitation on an individual's ability to perform basic work-related physical or mental activities (20 CFR 416.921). Bowen v. Yuckert, 107 S.Ct. 2287, 2295-2298 (1987); Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

In determining whether a medical condition constitutes a severe impairment, the ALJ must consider and evaluate such factors as (1) determinations by other agencies (even though not binding on the Commissioner); (2) opinion of the treating physician with respect to the diagnosis, treatment, response to treatment, and limiting effects of the impairment; (3) the consistency of the diagnosis and treatment of the medical condition; (4) the regular prescription of medication for the medical condition; (5) lay testimony or other evidence of the limiting effects of the impairment; and (6) the cumulative impact of the medical condition on the plaintiff's other physical and/or mental impairments. The administrative decision that the plaintiff does not have a severe impairment is not supported by substantial evidence if the ALJ ignores or summarily dismisses such evidence in the case record. Loza v. Apfel, 219 F. 3d 378, 394-398 (5th Cir. 2000) [reversing ALJ decision that mental impairment was not severe].

At the administrative hearing (which yielded all of twelve pages of transcript), the ALJ's questions focused more on the disability of the plaintiff's son rather than on her functional limitations. She said she could not work because she is "sick" from "arthritis" located in "all my body." [TR 184]. Charles Murphy, M.D., the non-examining medical expert, testified that the plaintiff has obesity and polyarthralgia with minimal degenerative changes in her spine. [TR 190]. In his opinion, she had no work-related limitations. [TR 191]. When questioned about Dr. Reeder's report on cross-examination, he said the limitations were based on her obesity rather than her back impairment and that he did not know how to interpret the percentages given. [TR

193-194]. The ALJ then appears to rehabilitate Dr. Murphy's testimony with a leading question (which is an ultimate conclusion of law rather than a medical opinion) [TR 194]:

> Q: "Okay. All right. Do you consider her to have nonsevere impairments?"
>
> A: "Yes."

Dr. Murphy's testimony amounts to little more than a trained parrot act. He said exactly what the ALJ wanted him to say. Heaven forbid that the ALJ re-contact Dr. Reeder for clarification of his opinion with respect to the plaintiff's limitations because doing so might result in a more specific assessment limiting her to light work which, in turn, would render the plaintiff "disabled" under rule 202.09 of the medical-vocational guidelines! After all, it is the ALJ's self-appointed duty to ensure that non-English speaking people from Mexico do not deplete the social security trust fund with disability claims. And "rent-a-doctor" is always there to help.[1]

---

[1] Dr. Murphy not only testifies for the Dallas office but also rides the circuit to the Houston office. Documents obtained under the Freedom of Information Act show that he made 122 appearances as a "borrowed" medical expert in Houston between October 2002 and March 2003, being paid a total of $19,360. Between October 2001 and March 2002, he made 133 appearances in Houston, being paid a total of $20,880. The HALLEX, an internal operating manual, states that medical experts must be chosen from the roster in rotation to the extent possible and that the medical expert's expertise should be appropriate to the claimant's diagnosed impairments (HALLEX I-2-5-36). A memorandum from the Chief Administrative Law Judge (Charles R. Boyer) dated October 9, 1998, states that failure to use medical experts on a rotational basis, and the repeated use of a particular medical expert by an ALJ, can cause doubt as to the "impartiality and independence between the ALJ and the witness, leading to questions concerning the credibility and fairness of hearings." A medical expert receives $80 for review of a file and $80 for an appearance at a hearing. [A copy of this information is marked as Exhibit "A" attached hereto incorporated for all purposes.]. That is a tidy sum of money just for testifying to what is obviously stated as diagnoses in the two consultative reports and giving a "yes" answer to the leading question "Do you consider her to have nonsevere impairments?" [TR 194].

The Supreme Court approved the use of medical experts at social security administrative hearings because their role is, or should be, limited to explaining medical problems in terms understandable to the layman-examiner and to offering an opinion to resolve conflicts in medical reports among examining physicians. The dissenting opinion warned against "circuit-riding doctors who never see or examine claimants to defeat their claims". Richardson v. Perales, 91 S.Ct. 1420 at 1431 and 1433 (1971).

With reference to legal authority for the proposition that the role of a medical expert is limited to explaining medical problems in layman terms and to resolving conflicts among examining physicians, counsel directs attention to the Supreme Court's language in Perales:

> "The trial examiner is a layman; the medical adviser is a board-certified specialist. *He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner.* He is a neutral adviser. This particular record discloses that Dr. Leavitt explained the technique and significance of electromyography. He did offer his own opinion on the claimant's condition. *That opinion, however, did not differ from the medical reports.* Dr. Leavitt did not vouch for the accuracy of the facts assumed in the reports. No one understood otherwise. We see nothing unconstitutional or improper in the medical adviser concept and in the presence of Dr. Leavitt in this administrative hearing."

Richardson v. Perales, 91 S. Ct. 1420, 1431 (1971) [emphasis added].

The Court of Appeals for the Fifth Circuit has also made it clear that opinion of a non-examining medical expert cannot by itself constitute substantial evidence that warrants the rejection of either an examining medical consultant or a treating physician. There must be significant other evidence in the record, in addition to the medical expert's testimony, that contradicts the opinion of either the treating or consulting doctor:

> "This is not a case where there is competent first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. Nor is this a case where the ALJ weighs the treating physician's opinion

7

>against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. Instead, this is a case where the ALJ summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant. At best, the record was incomplete, and Pertusi [the treating doctor] could have provided clarification or supplementation, if requested. This case is reversed and remanded for further consideration consistent with this decision."

Newton v. Apfel, 209 F. 3d 448, 458 (5th Cir. 2000) [internal citations omitted]. See also: Villa v. Sullivan, 895 F. 2d 1019, 1024 (5th Cir. 1990) [ALJ may rely on a non-examining physician's assessment when those findings are based upon careful evaluation of the medical evidence and do not contradict those of an examining physician]. Accord: Strickland v. Harris, 615 F. 2d 1103, 1109-1110 (5th Cir. 1980); Johnson v. Harris, 612 F. 2d 993, 996-998 (5th Cir. 1980).

In a federal court proceeding other than judicial review of a social security administrative decision, the testimony of a physician who has not examined the plaintiff is properly excluded as unreliable. Such an "expert" brings "little more than his credentials and a subjective opinion" to a jury. See: Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993); Viterbo v. The Dow Chemical Co., 826 F. 2d 420 (5th Cir. 1987).

The regulations permit the ALJ to use the testimony of a non-examining physician ("medical expert") on the nature and severity of the plaintiff's impairments (20 CFR 416.927(f)(2)(iii)); however, the regulations do not permit the use of a medical expert as a substitute for obtaining evidence from the treating source concerning the plaintiff's functional limitation (20 CFR 416.912(e)(1), 416.927(c)(3) and Social Security Rulings 96-2p and 96-5p). The primary purpose for obtaining the testimony of Dr. Murphy was not to (1) explain the etiology of a disease or a disease progress, or the significance of clinical or laboratory findings in the record, in terms understandable to a layman; or (2) determine whether an impairment meets

or equals in severity the criteria of the Listing of Impairments; or (3) resolve conflicts in the reports or opinions between or among examining physicians; or (4) offer an opinion about the adequacy of the medical record and what additional evidence, if any, might be needed; or (5) determine the usual dosage and effects of drugs and other forms of therapy; or (6) assess as a claimant's failure to follow prescribed treatment; or (7) ascertain the onset of an impairment. The primary purpose for Dr. Murphy's testimony in this case was to avoid developing evidence from the treating or examining sources as the regulations require the ALJ to do.

The social security regulations, which should be required reading for ALJs assigned to the Social Security Administration, state (20 CFR 416.927(d)): "Regardless of its source, we will evaluate every medical opinion we receive." The ALJ provides a synopsis of Dr. Reeder's report, but no evaluation of his opinion. [TR 21]. He acknowledges that the plaintiff has a treating source, Abraham Cano, M.D., but failed to obtain, or ask the plaintiff's representative to obtain, an opinion from him. [TR 20-21]. Remember: "It was [Dr. Murphy's] opinion that the claimant has no severe impairments." [TR 21]. So - that's that! Why bother with developing the record with unnecessary opinions from a treating doctor, or clarification of an opinion from the consulting examiner, when Dr. Murphy is sitting by the ALJ's side to manufacture all the evidence needed to deny the claim?

Just one more observation from the United States Supreme Court (which, of course, is paled compared to Dr. Murphy's eminent opinions) but somewhat relevant to this case: social security proceedings are, and were intended to be, inquisitorial rather than adversarial. The ALJ's duty is to investigate and develop facts and not to act as an advocate for the government to oppose claims for benefits. Sims v. Apfel, 120 S. Ct. 2080, 2085 (2000); Richardson v. Perales,

91 S. Ct. 1420, 1428 (1971).

John W. Reeder, M.D., diagnosed the plaintiff with obesity and complaints of back pain. He offered the following opinion on her ability to perform work-related activities because of obesity: "sitting 100%, standing 80%, moving about 75%, lifting 70%, carrying 70%, handling objects 90%, hearing 100%, and speaking 100%" [TR 143]. Dr. Reeder did not explain what his report card meant in terms of how long the plaintiff could be on her feet or how much weight she could lift or carry — just minor facts relevant to a determination of her exertional abilities defined in the regulations (20 CFR 416.967(a)-(e)) — and the ALJ apparently did not see fit to re-contact Dr. Reeder to find out what he meant.

The Social Security Act and regulations promulgated thereunder contemplate a *de novo* hearing. The ALJ, as well as the Appeal Council, may receive new evidence or obtain material missing evidence. The ALJ, as well as the Appeals Council, may consider all issues, even those which were decided in the claimant's favor at any lower level of administrative adjudication. 42 USC 405(b); 20 CFR 404.944 - 404.961; 20 CFR 404.966 - 404.982. See also: <u>Boettcher v. Secretary HHS</u>, 759 F. 2d 719 (9th Cir. 1985) [claimant cannot limit issues before ALJ]; <u>Taylor v. Heckler</u>, 765 F. 2d 872 (9th Cir. 1985) [Appeal Council may review all findings by ALJ].

Calling still another non-examining physician as a "medical expert" to review and re-evaluate the same medical evidence that was before the non-examining State agency reviewing physicians does not constitute a *de novo* hearing. The ALJ must at least make an inquiry into whether additional medical records are available and whether a medical opinion from a treating or examining source about the plaintiff's limitations can be obtained. To condone the ALJ's refusal or failure to ensure a full and fair record renders all of the regulations and administrative

rulings addressing the duty to obtain a complete record pointless. The ALJ has a duty to develop a fair and adequate record whether or not the plaintiff is represented by counsel. <u>Brown v. Shalala</u>, 44 F. 3d 931, 934 (11th Cir. 1995), citing <u>Clark v. Schweiker</u>, 652 F. 2d 399, 404 (5th Cir. 1981); <u>Kane v. Heckler</u>, 731 F. 2d 1216, 1219 (5th Cir. 1984) [remanding case when ALJ asked one question of the claimant in a five-minute hearing].

What real need is there for an administrative law judge to be assigned to the Social Security Administration when, in fact, a medical expert whose testimony is adopted verbatim makes the decision as to a plaintiff's disability? The plaintiff did not receive a fair hearing — she merely received a third-level paper review of her claim. The agency is not serving its function of providing a *de novo* hearing.

## RELIEF REQUESTED

The Court should remand this case to the Commissioner pursuant to sentence four (4) of 42 USC 405(g) for further proceedings. The Court should also award reasonable attorney fees, court costs and other expenses of litigation, and all other legal or equitable relief to which the plaintiff is entitled in connection with the present action.

Respectfully submitted,

INGRAM LAW FIRM, P.C.

By: _____
JOHN J. INGRAM II
State Bar No. 24025447
Federal Bar No. 25468
3016-A N. McColl
McAllen, Texas 78501
Telephone:  (956) 661-0074
Facsimile:   (956) 661-0047

ATTORNEY FOR PLAINTIFF

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was mailed to the opposing counsel on  October 27, 2004   by United States mail and by facsimile.

    KERRY J. SIMPSON, Attorney-in-Charge
    Special Assistant U. S. Attorney
    Office of the General Counsel, SSA
    1301 Young Street, Suite 430
    Dallas, Texas 75202
    Telephone: (214) 767-5582
    Facsimile: (214) 767-9189