# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ENEDELIA GONZALEZ,           §| | |
|     Plaintiff,           § | | |
| § | | |
| VS.           § | | CIVIL ACTION NO. B-04-123 |
| § | | |
| JO ANNE B. BARNHART,           § | | |
| COMMISSIONER OF SOCIAL SECURITY,   § | | |
|     Defendant.           § | | |

**MEMORANDUM OPINION AND JUDGMENT**

Pending before the Court are two motions: Plaintiff's Motion for Summary Judgment (Docket No. 9) and Defendant's Motion for Summary Judgment (Docket No. 11). For the reasons stated below, Plaintiff's Motion for Summary Judgment is hereby **DENIED** and Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**I.   BACKGROUND**

On August 30, 2002, Plaintiff filed an application for disability benefits under Title XVI of the Social Security Act ("the Act"). She alleged that she was disabled due to arthritis, back problems, and poor vision. (Docket No. 7, at 187–88.) Her application was denied at both the initial and reconsideration stages. Plaintiff requested and received an administrative hearing, which was held on March 3, 2004. On March 26, 2004, the Administrative Law Judge ("ALJ") ruled that Plaintiff is not disabled within the meaning of the Act. *Id.* at 19–22. The Appeals Council denied further review on June 4, 2004, making the ALJ's determination the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**II.   STANDARD OF REVIEW**

The same standard rules governing summary judgments apply to a review of an administrative denial of social security benefits. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). While standard summary judgment rules control, the judicial role in social security matters, including appellate review, is limited by 42 U.S.C. § 405(g). *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). This Court may review the ALJ's findings: (1) to determine whether the factual findings are supported by substantial evidence on the record as a whole and (2) to determine whether the ALJ applied the proper legal standard. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if "there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence'" exists. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). Conflicts in the evidence are for the ALJ, not this Court, to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)(per curiam).

### III.   DISCUSSION

#### A.   Applicable Legal Standards

A claimant is not entitled to disability benefits unless she establishes that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *see also* 42 U.S.C.A. §§ 416(i)(1), 423(d)(1)(A). In making disability determinations, ALJs as proxies for the Social Security Commissioner use a five-step analysis. *Greenspan*, 38 F.3d at 236 (citing 20 CFR § 404.1520(b)-(f)). The five sequential steps are as follows:

(1)   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.
(2)   An individual who does not have a 'severe impairment' will not be found to be disabled.
(3)   An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of

>   vocational factors.
> (4) If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' will be made.
> (5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Id.* The burden of proof fluctuates between the claimant and the Commissioner. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981). Initially, the burden rests on the claimant to produce substantial evidence of her disability. *Id.* However, once the claimant meets the burden of showing that she cannot perform her usual line of work, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the economy. *Id.* In the context of the five-step analysis, the claimant bears the burden on the first four steps while the Commissioner bears the burden on the fifth. *Greenspan*, 38 F.3d at 236. A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive thereby terminating the Commissioner's analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

The instant case centers around the second step of the analysis: whether Plaintiff has a severe impairment that renders her disabled within the meaning of the Act. An impairment is not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)(citing *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984); *see also* 20 C.F.R. § 416.921 (2005). Stated differently, a "severe" impairment is one which imposes more than a minimal limitation on an individual's ability to perform basic work-related physical or mental activities. Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking. 20 C.F.R. § 404.1521(b). Basic work activities also include understanding, carrying out, and remembering simple instructions;

use of judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

### B.     The Administrative Evidentiary Record

The record shows that Plaintiff was born in Matamoros, Mexico, and is currently in her fifties living in Santa Rosa, Texas. She has been in the United States since 1984 and has a fourth grade education. She worked as a field laborer until 1987 when she decided to stay home to take care of her special-needs child who is currently close to twenty-years-old. There is also some indication that she stopped working because of aches and pains. She was diagnosed with arthritis by Dr. Abraham Cano whose records cover the period between November 2, 1999, through February 14, 2003. Dr. Cano treated her for generalized arthritis, upper respiratory infections, and emotional upset.

A consultative internal medicine examination was conducted by Dr. Dionisio B. Calvo on February 16, 2001, prior to the date Plaintiff filed her application for disability benefits. (Docket No. 7, at 137–39.) Dr. Calvo diagnosed Plaintiff with polyarthralgia with no evidence of any contracture deformity, subluxation, atrophy, fasciculations, or radiculopathy. He noted that she was obese, weighing 182 pounds at a height of 59 inches. He also noted that she was able to perform her daily activities, walked unassisted, was able to transfer to and from the examining table without difficulty, and was able to dress and undress herself without any problem. Her head, neck, and spine were normal, she had normal coordination, her motor function was intact, her gait was normal, and she was able to stand with both feet together.

On November 5, 2002, after Plaintiff filed her application, another consultative internal medicine examination was conducted by Dr. John Reeder. *Id.* at 141–43. Dr. Reeder diagnosed Plaintiff as obese with complaints of back pain. He noted that an x-ray indicated that her spine was normal except for scattered osteophytes, that she could walk on heels and toes, hop and squat without

difficulty except for that imposed by her huge abdomen, and that her head and neck had no definite tenderness, deformity, or limitation of rotation, flexion, or extension. Most importantly for the purposes of this appeal, Dr. Reeder provided estimates for Plaintiff's ability to do work activities as follows: "sitting 100%, standing 80%, moving about 75%, lifting 70%, carrying 70%, handling objects 90%, hearing 100%, and speaking 100%." He also stated that the "vast majority of the limitation is secondary to obesity; exercise and weight loss would improve the activities considerably." He did not find any substantial impairment.

Two persons testified at the administrative hearing: Plaintiff and Dr. Charles Murphy. Plaintiff testified she could not work because she is sick, has arthritis, has a difficult time seeing, and has lower back problems. (Docket No. 7, at 187–88.) Dr. Murphy, a non-treating medical expert, testified that she is obese and that the two consultative examinations were within normal parameters. *Id.* at 193. In his opinion, she does not have severe impairments and she is not limited from performing light activity. When asked about the percentages provided by Dr. Reeder with regard to her ability to engage in work activities, Dr. Murphy stated that he did not know how to interpret them.

The ALJ issued his ruling on March 26, 2004, determining that Plaintiff was not eligible for Supplemental Security Income payments. *Id.* at 20–22. He concluded, and Plaintiff does not dispute, that she has not engaged in substantial gainful activity since her alleged onset date. He also concluded that she does not have a severe impairment and that she "retains the capacity for work that exists in significant numbers in the national economy…" *Id.* at 21. It appears that he based his ruling in large part on the opinions of Dr. Murphy and State Agency physicians who reviewed Plaintiff's medical records. The State Agency physicians determined that Plaintiff's alleged limitations were only partially supported by the evidence of record and not disabling under Social Security Regulations.

### C. Analysis

Plaintiff claims that the ALJ did not base his ruling on substantial evidence and that he improperly relied on the testimony of a medical expert, Dr. Murphy, rather than the observations of treating physicians. "Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Moreover, a treating physician's opinions are not conclusive. *Id.* However, ALJ's are generally required to "give more weight to opinions from…treating sources" on account of their comparatively greater familiarity with a claimant's medical condition. 20 C.F.R. §§ 404.1527(d)(2), 416.327(d)(2). When not accorded controlling weight, treating sources' medical opinions are to be assessed in light of multiple factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). These factors include: (a) the duration of the treatment relationship and frequency of examination, (b) the "[n]ature and extent of the treatment relationship," (c) the supportability of the source's opinions in light of the relevant medical evidence and reasoning, (d) the consistency of proffered opinions with the remainder of the record, (e) the expertise of the medical source, and (f) any other relevant factors. 20 C.F.R. §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6).

Plaintiff relies on the percentages provided by Dr. Reeder to show that she has a severe impairment. Assuming arguendo that the percentages indicate that Plaintiff might have a severe impairment, the ALJ was within his purview not to assign Dr. Reeder's observations controlling weight. Dr. Reeder conducted a consultative examination; he did not treat Plaintiff on a regular basis. Moreover, he did not state that she was disabled. Even though he provided percentages indicating her ability to perform work-related activities, he did not opine that she was substantially impaired nor would his percentages suggest that finding. Finally, he stated that they would be alleviated by exercise

and weight loss.[1]

It should also be pointed out that Dr. Murphy's testimony did not contradict Dr. Reeder's report. He stated that both consultative examinations were basically normal. He also stated that Dr. Reeder's report indicates that a "vast majority" of Plaintiff's limitations were "secondary to obesity," not due to her back. (Docket No. 7, at 194.) Dr. Reeder's diagnosis was obesity and complaints of back problems; all other findings were apparently normal and consistent with previous examinations. Aside from the percentages appended to the end, there is nothing within Dr. Reeder's report that would support the contention that Plaintiff is severely impaired.

The fact that Dr. Murphy was unable to interpret those percentages does not undermine the rest of the record relied upon by the ALJ in determining that Plaintiff does not suffer from a severe impairment. Plaintiff argues that the ALJ should have contacted Dr. Reeder for clarification; however, the ALJ is only required to seek clarification or additional evidence from a treating physician "absent other medical opinion evidence based on personal examination or treatment of the claimant…." *Newton*, 209 F.3d at 453. The record before the ALJ in this case contained other medical opinion that did not support Dr. Reeder's assessment of Plaintiff's limitations. As such, the ALJ was not required to contract Dr. Reeder for clarification.

Finally, Plaintiff glosses over the fact that no doctor has stated that she is disabled.[2] She attempts to argue that this case falls within the ambit of *Newton*, a case where the ALJ completely rejected the opinions of a treating physician in favor of a medical expert's testimony. *Newton*, 209

---

[1] There is no claim that Ms. Gonzalez's obesity has permanently impaired her (either directly or indirectly by exacerbating her arthritic condition) and, indeed, Dr. Murphy testified such was not the case. Nor was there any suggestion that her need to care for her adult, substantial-needs child caused her to be substantially impaired, although it without a doubt cannot be beneficial to her health.

[2] Even if Dr. Reeder had specifically stated that Plaintiff is disabled, as a matter of law, such a blanket statement of disability is neither dispositive nor entitled to "any special significance." 20 C.F.R. §§ 404.1527(e)(1)–(3), 416.927(e)(1)–(3).

F.3d at 458. However, as previously stated, Dr. Murphy's testimony did not contradict the opinions belonging to either the medical consultants or the Plaintiff's treating physician. Moreover, all of the medical findings, including those of Dr. Murphy, are consistent—Plaintiff has arthritis and she is obese.[3] Dr. Reeder's report is the only one indicating that Plaintiff's limitations may be more than slightly abnormal; however, the ALJ properly weighed all of the conflicts and the record adequately bears his conclusions.

## IV.   CONCLUSION

Based on the record before him, the ALJ properly concluded that there was substantial evidence indicating that Plaintiff does not qualify for disability benefits. Therefore, this Court **DENIES** Plaintiff's Motion for Summary Judgment (Docket No. 9) and **GRANTS** Defendant's Motion for Summary Judgment (Docket No. 11). Plaintiff's suit is hereby **DISMISSED with prejudice**.

Signed in Brownsville, Texas, this 10th day of May, 2005.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

---

[3]   Although Plaintiff's application and testimony asserted that she also has problems with her vision, the record does not support the conclusion that her vision problems are disabling. The medical records indicate that her vision is correctable and that she is not legally blind.